

1  Dale C. Campbell, State Bar No. 99173
   Peter D. Halloran, State Bar No. 184025
2  **weintraub** genshlea chediak
   law corporation
3  400 Capitol Mall, 11th Floor
   Sacramento, CA 95814
4  (916) 558-6000 – Main
   (916) 446-1611 – Facsimile
5
   D. Greg Durbin, State Bar No. 81749
6  McCormick Barstow Sheppard Wayte & Carruth LLP
   Attorneys at Law
7  5 River Park Place East
8  Fresno, CA 93720
   (559) 433-1300 – Main
9  (559) 433-2300 - Facsimile

10 Attorneys for Plaintiff and Cross-Defendants
   The Morning Star Packing Company, L.P.,
11 and California Fruit and Tomato Kitchens, L.L.C.,
   fka California Fruit Packing Company, L.L.C.
12

13              UNITED STATES DISTRICT COURT

14            EASTERN DISTRICT OF CALIFORNIA

15                   [FRESNO DIVISION]

16

17 THE MORNING STAR PACKING          ) Case No.: CIV F-03-6938 REC LJ0
   COMPANY, L.P., and CALIFORNIA FRUIT )
18 AND TOMATO KITCHENS, L.L.C., formerly )
   known as CALIFORNIA FRUIT PACKING  ) JUDGMENT [PROPOSED]
19 COMPANY, L.L.C.,                   )
                                      )
20      Plaintiffs,                   )
                                      )
21      vs.                           )
                                      )
22 CROWN CORK & SEAL COMPANY (USA),   )
   INC., a Delaware corporation, and DOES 1 )
23 through 10, inclusive,             )
                                      )
24      Defendant.                    )
                                      )
25 ─────────────────────────────────  )
                                      )
26 CROWN CORK & SEAL COMPANY (USA),   )
   INC.,                              )
27                                    )
        vs.                           )
28                                    )
   THE MORNING STAR PACKING           )

weintraub genshlea chediak sproul
A LAW CORPORATION

COMPANY, L.P. AND CALIFORNIA FRUIT )
PACKING COMPANY, LLC, )
                                     )
        Cross-Defendants.            )

Pursuant to this Court's Local Rule 78-230(h), this Court considered without hearing the Motion to Dismiss all of plaintiff California Fruit and Tomato Kitchens, L.L.C.'s ("California Fruit") claims filed by defendant Crown Cork & Seal Company (USA), Inc.'s ("Crown"). At the same time, this Court considered without hearing California Fruit's Counter-Motion for Leave to file a Second Amended Complaint. By order dated August 2, 2004, a copy of which is attached as Exhibit A, the Court dismissed California Fruit's claims against Crown with prejudice and denied California Fruit's Motion for Leave to Amend.

On December 3, 2004, Crown's Motion for Summary Judgment as to the claims asserted against it in the First Amended Complaint by plaintiff The Morning Star Packing Company ("Morning Star") came up for hearing before this Court in Department 6, the Honorable Magistrate Judge Lawrence J. O'Neill presiding. Morning Star appeared through its attorneys Dale C. Campbell and D. Greg Durbin and Crown appeared through its attorney Mark H. Rosenthal. By order dated December 3, 2004, a copy of which is attached as Exhibit B, the Court, after having read and considered the pleadings and oral argument presented by the respective parties, granted defendant Crown's motion for summary judgment as to all claims asserted by plaintiff Morning Star against defendant Crown.

On September 7, 2005, the Court entered an order dismissing Crown's Cross-Complaint without prejudice pursuant to Federal Rule of Court 41(a)(1), a copy of which is attached as Exhibit C. This dismissal of Crown's Cross-Complaint resolved all remaining issues in this action.

Therefore, in accordance with the above rulings, IT IS HEREBY ADJUDGED AND DECREED as follows:

1.      Judgment is entered in favor of defendant Crown Cork & Seal Co. (USA), Inc. as to all claims asserted against defendant Crown in this action by plaintiffs Morning Star Packing Company, L.P. and California Fruit and Tomato Kitchens, L.L.C.;

1          2.      All parties shall bear their own costs and expenses.

2          IT IS SO ORDERED.

3
4      Dated: _December 2_ 2005                    _Lawrence J. O'Neill_

5                                                  Lawrence J. O'Neill
                                                   United States Magistrate Judge

6

7

8      Approved as to form:

9

10     _/s/_____
       Dale C. Campbell

11     Counsel for Plaintiffs and Counter-defendants
       Morning Star Packing Company and

12     California Fruit and Tomato Kitchens

13

14

15     _/s/_____
       Mark H. Rosenthal

16     Counsel for Defendant and Cross-complainant

17     Crown Cork & Seal Company, Inc.

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

1

2

3

4

5

6

7

FILED

2004 AUG -3 A 9: 23

CLERK, US DIST. COURT
EASTERN DIST. OF CALIF

BY_____
          DEPUTY

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 | THE MORNING STAR PACKING           CASE NO. CV-F-03-6938 LJO
   | COMPANY, L.P.,

12 |                                    <u>ORDER ON DEFENDANT'S MOTION TO</u>
   |              Plaintiff,            <u>DISMISS AND PLAINTIFFS' MOTION FOR</u>
13 |        vs.                         <u>LEAVE TO AMEND COMPLAINT</u>
                                        (Docs. 16 and 20.)
14 | CROWN CORK & SEAL CO (USA), INC.,

15 |              Defendant.
                                  /
16 | AND RELATED CROSS ACTIONS

17                                /

18                              **INTRODUCTION**[1]

19          Defendant Crown Cork & Seal Company (USA), Inc. ("Crown") seeks to dismiss plaintiff

20   California Fruit and Tomato Kitchens, L.L.C.'s ("California Fruit's") breach of contract claims on

21   grounds they are time barred pursuant to a contractual statute of limitations. By counter motion, plaintiff

22   The Morning Star Packing Company, L.P. ("Morning Star") and California Fruit seek to file a second

23   amended complaint to reform a tolling agreement.

24          After review of the parties' papers, this Court considered Crown's motion to dismiss and

25   Morning Star and California Fruit's (collectively "plaintiffs'") motion for leave to file their proposed

26

27          [1]       Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties consented to proceed before a United States
             Magistrate Judge, and by a May 4, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J.
28           O'Neill for all further proceedings.

                                                  1

1 second amended complaint on the record and without the August 6, 2004 hearing, pursuant to this
2 Court's Local Rule 78-230(h). For the reasons discussed below, this Court:

3     1.    GRANTS Crown's motion to dismiss California Fruit; and

4     2.    DENIES plaintiffs' motion for leave to file their proposed second amended complaint.

5 **BACKGROUND**[2]

6 **Crown's Alleged Breach Of Contract**

7     Plaintiffs are separate produce processors and packagers and sell to different markets although
8 Morning Star is California Fruit's general partner. California Fruit processes bulk fruit and vegetables
9 for large food manufacturers and planned to develop retail lines. Crown manufactures and sells cans.

10     In early 2001, plaintiffs negotiated with Crown to supply them cans. On April 25, 2001,
11 plaintiffs signed a four-year written contract ("requirements contract") with Crown to purchase
12 California Fruit's requirements of cans. At that time, California Fruit was a new entity, and Crown
13 required Morning Star to sign the contract to ensure performance.

14     The requirements contract provided estimates of plaintiffs' can purchases. According to Crown,
15 in 2001, plaintiffs purchased a small fraction of estimated quantities. On January 8, 2002, Crown
16 terminated the requirements contract by a January 8, 2002 letter. Plaintiffs claim that the termination
17 was a material breach of the requirements contract and that they were compelled to purchase cans from
18 other suppliers at higher prices after Crown closed its Modesto plant.

19     The requirements contract contains a Schedule C which includes a limitations provision and
20 states in part:

21     5.    WARRANTIES, DISCLAIMER OF WARRANTIES AND LIMITATIONS OF
          LIABILITY.
22

23     Seller warrants that the goods sold by it shall be free from defects in
    workmanship and materials. . . .

24     . . .

25     Purchaser shall not bring any claim or court action arising under this agreement
    unless such claim or action is brought within one (1) year after such claim or cause of
26     action has accrued.

27

28     [2]    A portion of the factual recitation is derived from plaintiffs' proposed second amended complaint.

2

1

### Tolling Agreement

2       In a January 11, 2002 letter, plaintiffs' counsel demanded Crown to comply with its obligations
3  under the requirements contract and stated: "We represent California Fruit Packing Company (now
4  California Fruit and Tomato Kitchens)." Defense counsel responded with his March 19, 2002 letter the
5  subject line of which stated "Morning Star Packing." Plaintiffs' counsel responded to defense counsel's
6  letter and started to use "Morning Star Packing Company" to refer to his client rather than California
7  Fruit. According to plaintiffs, "Morning Star Packing Company" and "California Fruit" were used
8  interchangeably.

9       The December 5, 2002 letter of plaintiffs' counsel reiterated that he represented the "Morning
10  Star Packing Company." According to plaintiffs, Crown knew that California Fruit used the cans and
11  suffered damages from breach of the requirements contract. Crown asked to view records to support
12  California Fruit's increased can costs. Morning Star and Crown entered into a confidentiality agreement
13  to exchange California Fruit's confidential financial information.

14       In addition, in December 2002, Morning Star and Crown negotiated and entered into a tolling
15  agreement to toll the requirements contract's one-year limitations period subject to either party's 30-day
16  notice to terminate the tolling agreement. California Fruit was neither a party nor signatory to the tolling
17  and confidentiality agreements. Plaintiffs contend the tolling and confidentiality agreements were
18  intended to benefit and apply equally to California Fruit since its records were disclosed and it used cans.

19       The tolling agreement contains integration and modification clauses:

20          4.    This document constitutes the entire agreement between the Parties, all
oral agreements being merged herein, and supersedes all prior representations. There are
21  no representations, agreements, arrangements, or understandings, oral or written, between
or among the Parties relating to the subject matter of this Agreement that are not fully
22  expressed in this document.

23          5.    The provisions of this Agreement may be modified at any time by
agreement of the Parties. Any such agreement made after the date of this Agreement
24  shall be ineffective to modify this Agreement in any respect unless in writing signed by
the party against whom enforcement of the modification or discharge is sought.
25

26

### The Parties' Claims

27       On November 14, 2003, Morning Star filed its complaint for breach of the requirements contract
28  against Crown in Stanislaus Superior Court. California Fruit was not a named plaintiff in the complaint.

1  On December 29, 2003, Crown filed its notice to remove the action to this Court.

2  On February 9, 2004, Crown filed its cross-complaint against plaintiffs to allege

3  misrepresentation and recision claims. By stipulation, on April 14, 2004, plaintiffs filed their first

4  amended complaint for breach of contract against Crown to name California Fruit as a plaintiff for the

5  first time. The first amended complaint notes: "It was understood and agreed by all the parties that

6  reference to Morning Star included the rights and obligations of California Fruit as well."

7  Crown filed its motion to dismiss California Fruit on grounds that it belatedly pursued an action

8  against Crown. In response, plaintiffs' filed their motion to file their proposed second amended

9  complaint to allege new facts and a new (second) cause of action for reformation of the tolling and

10  confidentiality agreements. The proposed reformation cause of action alleges:

11         36.   Either a mutual or unilateral mistake occurred in connection with the drafting of the Confidentiality Agreement and the Tolling Agreement. As a result of a

12  mistake, California Fruit was not made a signatory to the Confidentiality Agreement or to the Tolling Agreement. . . .

13

14         37.   Therefore, a mutual mistake occurred since neither party realized that California Fruit was mistakenly omitted. Alternatively, a unilateral mistake occurred

15  since Crown Cork realized or suspected that the wrong entity was executing the two agreements.

16

17  The proposed reformation cause of action seeks to extend the scope and application of the tolling

18  and confidentiality agreements to California Fruit.

19  **DISCUSSION**

20  **Limitations Period**

21  California Code of Civil Procedure section 337 provides a four-year limitations period for breach

22  of a written contract. Nonetheless, California courts grant contracting parties substantial freedom to

23  modify limitations periods:

24         In general, California courts have permitted contracting parties to modify the length of the otherwise applicable California statute of limitations, whether the contract

25  has extended or shortened the limitations period. . . .

26     . . .

27         As for shortening the limitations period, the courts will enforce the parties' agreement provided it is reasonable. . . . For instance, the parties can shorten California's

28  four-year statute of limitations for breach of written contract . . . to three months . . . six

4

1  months . . . or a year.

2  *Hambrecht & Quist Venture Partners v. American Medical International, Inc.*, 38 Cal.App.4th 1532,
3  1547-1548, 46 Cal.Rptr.2d 33, 42-43 (1995) (citations omitted).

4  Moreover, parties to a sales contract governed by the Uniform Commercial Code can shorten the
5  four-year limitations period for breach of contract to not less than a year. Cal. Com. Code, § 2725(1);
6  *Hambrecht*, 38 Cal.App.4th at 1548, 46 Cal.Rptr.2d at 43. A further restriction to a shortened
7  limitations period is that it not be so "unreasonable as to show imposition or undue advantage in some
8  way." *Frankini v. Bank of America Nat'l Trust and Sav. Ass'n*, 31 Cal.App.2d 666, 676, 88 P.2d 790,
9  795 (1939).

10  Crown contends that purchases under the requirements contract were not discrete contracts and
11  that there is only one action for total breach of the requirements contract. "The unjustified failure to
12  perform a material promise or covenant, where the contract is entire, is a breach." 1 Witkin, Summary
13  of Cal. Law (9th ed. 1987) Contracts, § 792, p. 715. In the case at hand, the original and first amended
14  complaints and proposed second amended complaints allege Crown "unilaterally breached" the
15  requirements contract with its January 8, 2002 termination letter. There is no issue of a series of discreet
16  contracts to reset the running of the one-year limitations period.

17  Tolling agreements must be in writing. Cal. Code Civ. Proc., § 360.5 ("No waiver shall bar a
18  defense to any action that the action was not commenced within the time limited by this title unless the
19  waiver is in writing and signed by the person obligated.") Plaintiffs point to no invalidity of the
20  contractual one-year limitations period. Although plaintiffs question the reasonableness of the one-year
21  limitations period, they willingly agreed to it. Morning Star took timely action to toll the statute of
22  limitations to mitigate reasonableness concerns as to the one-year limitations period. As such attention
23  turns to application of the tolling provision here.

24  ## Application Of The Tolling Provision

25  The requirements contract appropriately shortened the limitations period from four years to one
26  year. Plaintiffs contend the limitations provision, reading the requirements contract as a whole, applies
27  to breach of warranty and defect claims, not to claims arising from contract termination.

28  California Civil Code section 1641 addresses giving effect to an entire contract and provides:

5

1  "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably
2  practicable, each clause helping to interpret the other." Moreover, "even if one provision of a contract
3  is clear and explicit, it does not follow that that portion alone must govern its interpretation; the whole
4  of the contract must be taken together so as to give effect to every part." *Alperson v. Mirisch Company,*
5  *Inc.*, 250 Cal.App.2d 84, 90, 58 Cal.Rptr. 178, 182 (1967). Courts "are not empowered under the guise
6  of construction or explanation to depart from the plain meaning of the writing and insert a term or
7  limitation not found therein." *Tanner v. Title Ins. & Trust Co.*, 20 Cal.2d 814, 824, 129 P.2d 383, 398
8  (1942).

9  Plaintiffs' position is unpersuasive despite the limitations period provision's location in the
10  warranties and liability limitations section. The limitations period provision is broad in its reference to
11  "any claim or court action arising under this agreement." It is not limited to defect or workmanship
12  claims. The limitations provision, reading the requirements contract as a whole, is broad enough to
13  encompass California Fruit's claims. Plaintiffs point to no requirements contract language to narrowly
14  apply the limitations provision to defect or workmanship claims.

15  In addition, plaintiffs unconvincingly argue that California Fruit timely complied with the
16  limitations provision in that Morning Star, acting jointly with California Fruit and by a December 5,
17  2002 letter of counsel, made a demand upon defense counsel. The demand letter makes no mention of
18  California Fruit and refers only to Morning Star's alleged damages. California Fruit points to no timely
19  claim on its behalf. Moreover, plaintiffs attempt to distinguish a "claim" as compared to an "action" is
20  disingenuous. The import of the limitations provision is to file a legal action within a year. If sending
21  a demand letter would have satisfied the limitations provision, there would have been no need for a
22  tolling agreement. California Fruit did not timely file its action against Crown.

23                                    **Amendment Of Plaintiffs' Complaint**

24  Plaintiffs seek to file their proposed second amended complaint to reform application of the
25  tolling and confidentiality agreements to California Fruit. F.R.Civ.P. 15(a) provides that after service
26  of a responsive pleading, "a party may amend the party's pleading only by leave of court or by written
27  consent of the adverse party; and leave shall be freely given when justice so requires." Granting or
28  denial of leave to amend rests in the trial court's sound discretion and will be reversed only for abuse

                                                    6

1  of discretion. *Swanson v. United States Forest Service,* 87 F.3d 339, 343 (9th Cir. 1996).

2      In addressing pleading amendments, the United States Supreme Court has explained:

3      If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject
       of relief, he ought to be afforded an opportunity to test his claim on the merits. In
4      absence of any apparent or declared reason – such as undue delay, bad faith or dilatory
       motive on the part of the movant, repeated failure to cure deficiencies by amendments
5      previously allowed, undue prejudice to the opposing party by virtue of allowance of the
       amendment, futility of the amendment, etc. – the leave sought should, as the rules
6      require, be "freely given."

7  *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962).

8      The Ninth Circuit Court of Appeals has enumerated factors to consider on a motion to amend:

9  (1) undue delay; (2) bad faith; (3) prejudice to the opponent; and/or (4) futility of the proposed

10 amendment. *Loehr v. Ventura County Community College District,* 743 F.2d 1310, 1319 (9th Cir. 1984).

11 Although "leave to amend should not be granted automatically," the circumstances under which

12 F.R.Civ.P. 15(a) "permits denial of leave to amend are limited." *Ynclan v. Department of Air Force,*

13 943 F.2d 1388, 1391 (5th Cir. 1991).)

14     As discussed below, consideration of the futility factor weighs in favor to deny plaintiffs leave

15 to file their proposed second amended complaint.

16                              ***Delay/Bad Faith***

17     "[D]elay alone – no matter how lengthy – is an insufficient ground for denial of leave to amend."

18 *United States v. Webb,* 655 F.2d 977, 980 (9th Cir. 1981); *Hurn v. Retirement Fund Trust of Plumbing,*

19 648 F.2d 1252, 1254 (9th Cir. 1981). In *Howey v. United States,* 481 F.2d 1187, 1191 (9th Cir. 1973),

20 the Ninth Circuit Court of Appeals observed:

21     The purpose of the litigation process is to vindicate meritorious claims. Refusing, solely
       because of delay, to permit an amendment to a pleading in order to state a potentially
22     valid claim would hinder this purpose while not promoting any other sound judicial
       policy.
23

24     Delay in combination with other factors may be sufficient to deny amendment. When "there is

25 lack of prejudice to the opposing party and the amended complaint is obviously not frivolous or made

26 as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion." *Hurn,* 648 F.2d

27 at 1254; *see Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1988) ("delay of

28 nearly two years, while not alone enough to support denial, is nevertheless relevant").

1    Plaintiffs seeks to add the proposed reformation claims and supporting factual allegations six
2  months after Morning Star filed this action.  Plaintiffs fail to directly address the six-month delay other
3  than to indicate they were mistaken regarding California Fruit's omission from the tolling and
4  confidentiality agreements.  Crown does not complain about delay.  As such, delay by itself it not a
5  determining factor.

6                                              *Prejudice*

7    Prejudice to the opposing party is the most critical factor in determining whether to grant leave
8  to amend.  *Howey*, 481 F.2d at 1190.  "The party opposing amendment bears the burden of showing
9  prejudice."  *DCD Programs*, 833 F.2d at 187; *Beeck v. Aqua-slide 'N' Dive Corp.*, 562 F.2d 537, 540
10  (8th Cir. 1977).  If a proposed amendment substantially changes the theory on which the case has been
11  proceeding and is proposed late enough so that the opponent would be required to engage in significant
12  new preparation, the court may deem it prejudicial.  6 Wright, Miller & Kane, *Federal Practice and*
13  *Procedure* (1990) Amendments Under Rule 15(a), § 1487, p. 623.  If the court determines that the
14  proposed amendment would result in defendant being put to added expense and the burden of a more
15  complicated and lengthy trial, leave to amend may be denied.  6 Wright, Miller & Kane, *Federal*
16  *Practice and Procedure* (1990) Amendments Under Rule 15(a), § 1487, p. 626-628.

17    Plaintiffs seek their amendment early in this action.  The nearest discovery deadline is the May
18  2, 2005 expert disclosure.  Trial will be October 25, 2005.  Prejudice to Crown is not an issue.

19                                              *Futility*

20    A motion to amend "is to be liberally granted where from the underlying facts or circumstances,
21  the plaintiff may be able to state a claim."  *McCartin v. Norton*, 674 F.2d 1317, 1321 (9th Cir. 1982);
22  *DCD Programs*, 833 F.2d at 186.  Denial of leave to file an amended complaint is appropriate where
23  an amendment is futile.  *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).  A "proposed
24  amendment is futile only if no set of facts can be proved under the amendment to the pleadings that
25  would constitute a valid and sufficient claim or defense."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209,
26  214 (9th Cir. 1988).  An amendment is futile when it lacks legal foundation.  *Shermoen v. United States*,
27  982 F.2d 1312, 1319 (9th Cir. 1992), *cert. denied*, 509 U.S. 903, 113 S.Ct. 2993 (1993); *Johnson v.*
28  *District 2 Marine Engineers Beneficial Assoc.*, 857 F.2d 514, 518 (9th Cir. 1988).  Leave to amend may

                                                    8

1  be denied if the proposed amendment is futile or would be subject to dismissal. *Saul*, 928 F.2d at 843.

2  To address futility of plaintiffs' proposed second amended complaint, this Court must determine

3  if there has been a mistake or fraud to warrant reformation of the tolling agreement.

4  *Reformation*

5  Federal courts administer a "function of equity" to "remedy what is known as 'scrivener's

6  mistakes' – mistakes performed by a person who drafted the instrument in such a manner that it did not

7  express what was actually agreed." *Flax v. Prudential Life Ins. Co.*, 148 F.Supp. 720, 727 (S.D. Cal.

8  1957). California Civil Code section 3399 codifies reformation for mistake or fraud:

9  When, through fraud or a mutual mistake of the parties, or a mistake of one party, which
   the other at the time knew or suspected, a written contract does not truly express the
10 intention of the parties, it may be revised on the application of a party aggrieved, so as
   to express that intention, so far as it can be done without prejudice to rights acquired by
11 third persons, in good faith, and for value.

12 "The purpose of reformation is to effectuate the common intention of both parties which was incorrectly

13 reduced to writing." *Bailard v. Marden*, 36 Cal.2d 703, 708, 227 P.2d 10, 13 (1951). Reformation

14 "assumes the existence of a valid contract which failed to express the actual intention of the parties and

15 it contemplates the continuance of the contractual relation upon the basis which they truly intended."

16 *Campbell v. Republic Indemnity Company of America*, 149 Cal.App.2d 476, 481, 308 P.2d 425 (1957).

17 A court is limited to "reform the writing to conform with the mutual understanding of the parties at the

18 time they entered into it, if such an understanding exists." *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 525,

19 117 Cal.Rptr.2d 220, 229 (1981).

20 Plaintiffs seek to "reform" the tolling and confidentiality agreements to apply to California Fruit

21 as a party. The longstanding rule in California is that a court of equity cannot change an agreement

22 between parties and "has no power to made a new contract. Its power is simply to reform a contract

23 already made. . . . [A] court of equity can neither add additional parties nor substitute other parties for

24 those already appearing upon the face of the writing." *Mabb v. Merriam*, 129 Cal. 663, 663-664, 62 P.

25 212 (1900). A court or equity "has no power to make a new contract for the parties, whether the mistake

26 be mutual or unilateral." *Shupe v. Nelson*, 254 Cal.App.2d 693, 700, 62 Cal.Rptr. 352 (1967); *see*

27 *American Home Ins. Co. v. Travelers Indemnity Co.*, 122 Cal.App.3d 951, 963-964, 175 Cal.Rptr. 826

28 (1981) ("It is a longstanding principle that judicial acceptance of an attempt to substitute new parties to

9

1    an insurance policy, where there is no underlying agreement to that effect, amounts to the court's making
2    a new contract.")

3          Plaintiffs point to several cases to support their argument that although California Fruit is not a
4    party to the tolling agreement, as an aggrieved party, the tolling agreement may be extended to cover its
5    claims. Plaintiffs provide a partial quote from *Watson v. Collins*, 204 Cal.App.2d 27, 32, 21 Cal.Rptr.
6    832, 836 that: "The right to reformation of an instrument is not restricted to the original parties to the
7    transaction . . ." Plaintiffs omit the remainder of the quote: ". . . ; for example, a purchaser from the
8    original grantee of real property may seek reformation of the original deed because of a mistake resulting
9    in a misdescription of the property." *Watson*, 204 Cal.App.2d at 32, 21 Cal.Rptr. at 836. *Watson*
10   addressed a promissory note which did not conform to the sales agreement, and the *Watson* court
11   explained subsequent grantees stood in the shoes of original grantees/purchasers and could raise the
12   defense of mistake. *Watson*, 204 Cal.App.2d at 32, 21 Cal.Rtpr. at 836. *Watson* did not involve a
13   party's omission from an agreement, and thus its application to the facts at hand is questionable.

14          Plaintiffs also rely on insurance coverage decisions. In *Cantlay v. Olds & Stoller Inter-*
15   *Exchange*, 119 Cal.App. 605, 7 P.2d 395 (1932), building material haulers canceled their insurance
16   policy after a company for whom haulers the worked exclusively obtained a policy to cover all trucks
17   in its service. Through a mistake, the new policy issued to the company contained a clause which
18   excluded all truck owners except the company. The exclusion was was stricken, and an amended policy
19   was delivered. On appeal after judgment in favor of the insurer to deny coverage for the haulers, the
20   California Court of Appeal observed:

21            The demanded reformation by Cantlay & Tanzola [the haulers] is for the purpose of
              showing their beneficial interest therein, according to the original agreement of the
22            parties. . . .

23            . . .

24            . . . In the instant case, although the policy of insurance is between the Eastman Company
              as the insured and the insurance company as the insurer, the allegations of the complaint
25            set forth a beneficial interest therein, in favor of the plaintiffs, and they are entitled to
              maintain this action.
26

27   *Cantlay*, 119 Cal.App. at 614 and 617, 7 P.2d at 399 and 400.

28          The facts here are dissimilar to *Cantlay*. This is not an insurance coverage action to which

1 California Fruit was an intended beneficiary of a policy. California Fruit was a party to the requirements
2 contract. By admitted drafting error, it was not named in the tolling agreement. There is no
3 demonstration that Morning Star entered into the tolling agreement for California Fruit's benefit to toll
4 the limitations period. Morning Star was a party to the requirements contract and entered into the tolling
5 agreement to toll the limitations period for its claims.

6   Plaintiffs point to *American Surety Co. of New York v. Heise*, 136 Cal.App.2d 689, 289 P.2d 103
7 (1955), where a 19-year-old boy purchased a car but the policy for the car named his father as the car's
8 sole owner and failed to name the son as an insured. After the son was involved in an accident when
9 driving the car, the insurer sought to void the policy. In affirming judgment for the son, the California
10 Court of Appeal noted the insurance agent's negligence or mistake resulted in the policy erroneously
11 showing the father as the car's sole owner. The Court of Appeal commented:

12     Since the insurer, through its agent, is responsible for the omissions and/or falsity
       of the declarations in the policy, it cannot now directly or indirectly assert the contents
13     of the policy against the insured to rectify its own wrong. . . .

14       . . .

15     . . . In the instant case the automobile dealer and [insurer's] agent were dealing with a
       minor school child whose father was called to the lot so as to permit the sale to the minor
16     through the father. The minor was the one intended to be protected by the insurance, as
       well as the father.
17

18 *Heise*, 136 Cal.App.2d at 695 and 696, 289 P.2d at 107 and 108.

19   Like *Cantlay*, *Heise* is an insurance coverage action addressing error in policy issuance. In
20 *Heise*, the parties had reached agreement as to the intended insured but through insurance agent error,
21 the policy incorrectly noted the car's owner and the insured. In this action, neither Crown nor Morning
22 Star acted as an agent similar to the insurance agent in *Heise*. Again, there is nothing to suggest
23 California Fruit was an intended beneficiary under the tolling agreement in that it was an independent
24 party to the requirements agreement and was not prohibited to enter into a tolling agreement with Crown.

25   Plaintiffs also rely on *Calhoun v. Downs*, 211 Cal. 766, 297 P. 548 (1931), where a real estate
26 sales agreement omitted a real estate broker's name and commission from a provision stating "I agree
27 to pay a commission of $___ to ___." The plaintiff brought action against the sellers and buyer to
28 recover his commission, and the California Supreme Court overruled demurrers in favor of the defendant

11

1  sellers and buyer. Dissimilar to the tolling agreement at issue here, the commission provision was
2  included in the *Calhoun* sales agreement, but not filled in, for payment of the real estate broker's
3  commission. The tolling agreement here did not include an unfilled blank for California Fruit's name.

4      As explained above, reformation's purpose is to revise an agreement's terms, not to add parties.
5  Plaintiffs do not challenge the terms of the tolling and confidentiality agreements. Plaintiffs point to no
6  erroneous expression of the parties' intentions as to the language of the tolling and confidentiality
7  agreements. Plaintiffs fail to substantiate invocation of reformation to apply the tolling and
8  confidentiality agreements to California Fruit, an unnamed party to the agreements.

9      "Extrinsic evidence to show mistake or fraud is admissible." *Stock v. Meek*, 35 Cal.2d 809, 817,
10  221 P.2d 15 (1950); *see* Cal. Code Civ. Proc., 1856(e). Such extrinsic evidence is admissible "even if
11  the contracting parties intended the writing to be a complete statement of their agreement." *Pacific State*
12  *Bank v. Greene*, 110 Cal.App.4th 375, 388, 1 Cal.Rptr.3d 739, 749-750 (2003); *see* Cal. Code Civ. Proc.,
13  § 1856(e). "[W]here the writing itself, through mistake, does not express the intention of the parties who
14  entered into it . . . and the writing does not therefore contain the real contract between the parties, the
15  objection as to parol evidence is without merit." *Pasqualetti v. Galbraith*, 200 Cal.App.2d 378, 381,
16  19 Cal.Rptr. 323 (1962). "Extrinsic evidence is necessary because the court must divine the true
17  intentions of the contracting parties and determine whether the written agreement accurately represents
18  those intentions." *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 525, 41 P.3d 46, 52 (2002). When "the
19  extrinsic evidence is not in conflict, the determination of whether a mutual mistake occurred is a
20  question of law." *Hess*, 27 Cal.4th at 527, 117 Cal.Rptr.2d at 228; *see Alderson v. Insurance Co. of*
21  *North America*, 223 Cal.App.3d 397, 412, 273 Cal.Rptr. 7 (1990).

22      The gist of plaintiffs' extrinsic evidence is that California Fruit was mistakenly not a party to the
23  tolling and confidentiality agreements and Crown knew as much. The extrinsic evidence suggests
24  plaintiffs' counsel omitted California Fruit perhaps because Morning Star is more visible than California
25  Fruit. Crown was not compelled to point out California Fruit's omission. Clearly, California Fruit's
26  omission was error but not the type contemplated to be cured by reformation.

27      F.R.Civ.P. 9(b) requires that for allegations of fraud of mistake, "the circumstances constituting
28  fraud or mistake shall be stated with particularity." Although plaintiffs' proposed second amended

12

1 │ complaint outlines events culminating in the tolling and confidentiality agreements, it lacks particular
2 │ factual allegations of fraud and mistake to invoke reformation. Plaintiffs' proposed second amended
3 │ complaint merely alleges Crown knew California Fruit used cans and asked for records to support
4 │ California Fruit's increased container costs during tolling agreement negotiations. (Paras. 22 and 23.)
5 │ The proposed second amended complaint lacks specific factual allegations to support Crown's
6 │ overreaching or knowledge of California Fruit's mistake and broadly speculates Crown "realized or
7 │ suspected that the wrong entity was executing" the tolling and confidentiality agreements. (Para. 37.)

8 │ ### *Equitable Estoppel*

9 │ Paragraph 25 of plaintiff's proposed second amended complaint alleges Crown is equitably
10 │ estopped to assert a limitations defense against California Fruit because Crown induced California Fruit
11 │ to delay by entering into the tolling and confidentiality agreements and discussing settlement of its claim.
12 │ "One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his
13 │ adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the
14 │ very delay caused by his course of conduct as defense to the action when brought." *Carruth v. Fritch*,
15 │ 36 Cal.2d 426, 433, 224 P.2d 702 (1950). Nonetheless, plaintiffs' proposed second amended complaint
16 │ fails to allege Crown's misrepresentation or promise to induce California Fruit to delay filing action.
17 │ *See Tubbs v. So. Cal. Rapid Transit Dist.*, 67 Cal.2d 671, 679, 63 Cal.Rptr. 377 (1967); *Jackson v.*
18 │ *Andco Farms, Inc.*, 130 Cal.App.3d 475, 480, 181 Cal.Rptr. 815, 818 (1982). Plaintiffs fail to justify
19 │ equitable estoppel in the absence of allegations that Crown lulled California Fruit into a false sense of
20 │ security.

21 │ The mere discussion of settlement is insufficient to invoke equitable estoppel based on the facts
22 │ asserted in plaintiffs' proposed second amended complaint. The tolling agreement's existence and
23 │ Morning Star's timely filed complaint demonstrate plaintiffs and their counsel were not deceived as to
24 │ the expiration of the limitations period. California Fruit was a party to the requirements contract and
25 │ not tricked to forego entering into the tolling agreement. Crown was not directly responsible for
26 │ California Fruit's omission from the tolling and confidentiality agreements.

27 │ ### CONCLUSION AND ORDER

28 │ For the reasons discussed above, this Court:

13

1       1.    GRANTS Crown's motion to dismiss and DISMISSES California Fruit's action with

2           prejudice; and

3       2.    DENIES plaintiffs' motion for leave to file their proposed second amended complaint.

4       IT IS SO ORDERED.

5

6   DATED: August 2, 2004

                                       LAWRENCE J. O'NEILL

7                                       UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

jh

United States District Court
for the
Eastern District of California
August 3, 2004

\* \* CERTIFICATE OF SERVICE \* \*

1:03-cv-06938

The Morning Star

v.

Crown Cork Seal Inc

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  August 3, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

> Dale Curtis Campbell                                    LJO
> Weintraub Genshlea Chediak Sproul
> 400 Capitol Mall
> 11th Floor
> Sacramento, CA  95814
>
> D Gregory Durbin
> McCormick Barstow Sheppard Wayte and Carruth
> PO Box 28912
> Five River Park Place East
> Fresno, CA  93729-8912
>
> Mark H Rosenthal
> Law Office of Mark H Rosenthal
> 44 Montgomery Street
> Suite 4020
> San Francisco, CA  94104

Jack L. Wagner, Clerk

By: _____
     Deputy Clerk

Case No: 1:03-cv-6938    Document No: 30,   1 Copy Printed: Aug, 3, 2004  03:25 PM

Dale Curtis Campbell
Weintraub Genshlea Chediak Sproul
400 Capitol Mall
11th Floor
Sacramento, CA 95814

**EXHIBIT B**

FILED

'05 DEC -3 P 4: 07

BY_____
DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

THE MORNING STAR PACKING
COMPANY, L.P.,

Plaintiff,

vs.

CROWN CORK & SEAL CO (USA), INC.,

Defendant.

_____/

AND RELATED CROSS ACTIONS

_____/

CASE NO. **CV-F-03-6938 LJO**

ORDER ON PLAINTIFF'S MOTION TO
CERTIFY ISSUE FOR APPEAL AND STAY OF
PROCEEDINGS; AND ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
(Doc. 31, 33)

Two motions are pending before this Court. In the first motion, by notice filed on October 7, 2004, dismissed-plaintiff California Fruit and Tomato Kitchens, LLC's ("California Fruit") moves for an order certifying for immediate appeal this Court's August 3, 2004 order on Crown Cork & Seal Company (USA), Inc. ("Crown") Motion to Dismiss and California's Fruit's counter-motion for leave to amend. California Fruit also moves for an order staying trial court proceedings pending appeal. Crown filed an opposition to the motion on November 16, 2004. California Fruit filed its reply on November 23, 2004.

In the second motion, by notice filed on October 14, 2004, Crown moves for summary judgment as to plaintiff The Morning Star Packing Company, L.P.'s ("Morning Star") breach of contract claims on grounds the claims are time barred pursuant to a contractual statute of limitations. Morning Star filed its opposition on November 19, 2004. Crown filed its reply on November 24, 2004. Both matters came

1

1  on regularly for hearing on December 3, 2004 in Department 6 of the above-entitled court. Plaintiff
2  Morning Star and California Fruit appeared by counsel Dale Campbell and Greg Durbin.  Defendant
3  Crown Cork & Seal Company (USA) Inc. appeared by telephone by counsel Mark Rosenthal. Having
4  considered the moving, opposition, and reply papers to both motions, as well as the arguments of counsel
5  and the Court's file, the Court issues the following order.

## FACTUAL AND PROCEDURAL BACKGROUND

### Crown's Alleged Breach Of Contract

8      Plaintiff Morning Star and dismissed-plaintiff California Fruit are separate produce processors
9  and packagers and sell to different markets although Morning Star is California Fruit's general partner.
10 California Fruit processes bulk fruit and vegetables for large food manufacturers and planned to develop
11 retail lines.  Crown manufactures and sells cans.

12      In early 2001, Morning Star and California Fruit negotiated with Crown to supply them cans.
13 On April 25, 2001, Morning Star and California Fruit entered into and signed a four-year written contract
14 ("requirements contract") with Crown to purchase California Fruit's requirements of cans.
15 At that time, California Fruit was a new entity, and Crown required Morning Star to sign the contract
16 to ensure performance.

17      The requirements contract provided estimates of the can purchases.  According to Crown, in
18 2001, California Fruit purchased a small fraction of estimated quantities.  On January 8, 2002, Crown
19 terminated the requirements contract by a January 8, 2002 letter.  Plaintiff claims that the termination
20 was a material breach of the requirements contract and that Morning Star and California Fruit were
21 compelled to purchase cans from other suppliers at higher prices after Crown closed its Modesto plant.

22      The requirements contract contains a Schedule C which includes a limitations provision and
23 states in part:

24      5.    WARRANTIES, DISCLAIMER OF WARRANTIES AND LIMITATIONS OF
            LIABILITY.
25
            Seller warrants that the goods sold by it shall be free from defects in
26      workmanship and materials. . . .
27
            . . .
28
            Purchaser shall not bring any claim or court action arising under this agreement

2

1  unless such claim or action is brought within one (1) year after such claim or cause of
action has accrued.

2

### Tolling Agreement

3

4  In a January 11, 2002 letter, Morning Star's counsel demanded that Crown comply with its

5  obligations under the requirements contract and stated: "We represent California Fruit Packing Company

6  (now California Fruit and Tomato Kitchens)." Defense counsel responded with his March 19, 2002

7  letter the subject line of which stated "Morning Star Packing." Plaintiff's counsel responded to defense

8  counsel's letter and started to use "Morning Star Packing Company" to refer to his client rather than

9  California Fruit. According to plaintiff, "Morning Star Packing Company" and "California Fruit" were

used interchangeably.

10

11  The December 5, 2002 letter of plaintiff's and California Fruit's counsel reiterated that he

12  represented the "Morning Star Packing Company." Morning Star and California Fruit note that Crown

13  knew California Fruit used the cans and suffered damages from breach of the requirements contract.

14  Crown asked to view records to support California Fruit's increased can costs. Crown and Morning Star

15  entered into a confidentiality agreement to exchange California Fruit's confidential financial

16  information.

17

18  In addition, in December 2002, Morning Star and Crown negotiated and entered into a tolling

19  agreement to toll the requirements contract's one-year limitations period subject to either party's 30-day

20  notice to terminate the tolling agreement. California Fruit was neither a party nor signatory to the tolling

21  and confidentiality agreements. Morning Star and California Fruit contend the tolling and confidentiality

22  agreements were intended to benefit and apply equally to California Fruit since its records were

disclosed and it used cans.

23

The tolling agreement contains integration and modification clauses:

24

25      4.     This document constitutes the entire agreement between the Parties, all
oral agreements being merged herein, and supersedes all prior representations. There are

26  no representations, agreements, arrangements, or understandings, oral or written,
between or among the Parties relating to the subject matter of this Agreement that are not

27  fully expressed in this document.

    5.     The provisions of this Agreement may be modified at any time by
28  agreement of the Parties. Any such agreement made after the date of this Agreement

3

1　　shall be ineffective to modify this Agreement in any respect unless in writing signed by
the party against whom enforcement of the modification or discharge is sought.

2

3　　　　　　　　　　　　　　　　**The Parties' Claims**

4　　On November 14, 2003, Morning Star filed its complaint for breach of the requirements contract

5　against Crown in Stanislaus Superior Court. California Fruit was not a named plaintiff in the complaint.

6　On December 29, 2003, Crown filed its notice to remove the action to this Court.

7　　On February 9, 2004, Crown filed its cross-complaint against plaintiffs to allege

8　misrepresentation and recision claims. By stipulation, on April 14, 2004, plaintiffs filed their first

9　amended complaint for breach of contract against Crown to name California Fruit as a plaintiff for the

10　first time. The first amended complaint notes: "It was understood and agreed by all the parties that

11　reference to Morning Star included the rights and obligations of California Fruit as well."

12　　　　　　　　　　　　　　　　**August 3, 2004 Order**

13　　Crown filed a motion to dismiss California Fruit on the grounds that it belatedly pursued an

14　action against Crown. In response, Morning Star and California Fruit moved for leave to file a proposed

15　second amended complaint which alleged new facts and a new (second) cause of action for reformation

16　of the tolling and confidentiality agreements. California Fruit sought leave to amend to seek reformation

17　of the Tolling Agreement to extend the scope to California Fruit. The proposed reformation cause of

18　action alleged:

19　　　　　　　36.　　Either a mutual or unilateral mistake occurred in connection with the
drafting of the Confidentiality Agreement and the Tolling Agreement. As a result of a

20　　　mistake, California Fruit was not made a signatory to the Confidentiality Agreement or
to the Tolling Agreement. . . .

21

22　　　　　　　37.　　Therefore, a mutual mistake occurred since neither party realized that
California Fruit was mistakenly omitted. Alternatively, a unilateral mistake occurred
since Crown Cork realized or suspected that the wrong entity was executing the two

23　　　agreements.

24　　On August 3, 2004, this Court denied California's Fruit's motion for leave to amend and granted

25　Crown's motion to dismiss. The Court held that California Fruit, as a non-signatory to the Tolling

26　Agreement, did not have standing to reform the Tolling Agreement. The Court ruled that the limitations

27　provision in the Supply Agreement barred California Fruit's claims. The Court dismissed California

28　Fruit from the first amended complaint.

4

1     **CALIFORNIA FRUIT'S MOTION TO CERTIFY ORDER AND FOR A STAY**

2                       **ANALYSIS & DISCUSSION**

3        California Fruit argues the issues to certify are whether a nonsignatory to an agreement is barred

4 as a matter of law from reforming t he a greement; a nd w hether a n on-mutual l imitation c lause i s

5 enforceable against only one party to a contract where both parties are suing for breach of the same

6 contract.

7        In this current motion, California Fruit asks the Court to certify an issue which does not finally

8 dispose of a claim or an individual defendant. Accordingly, plaintiff asks for certification pursuant to

9 28 U.S.C. §1292(b). When an issue is unresolved and interlocutory resolution could materially advance

10 the termination of the litigation, §1292(b) permits the district court judge to certify the question:

11                   (b) When a district judge, in making in a civil action an order not
otherwise appealable under this section, shall be of the opinion that such

12                   order involves a controlling question of law as to which there is
substantial ground for difference of opinion and that an immediate appeal

13                   from the order may materially advance the ultimate termination of the
litigation, he shall so state in writing in such order. . . .

14

15        Section 1292(b) provides for interlocutory appeals from otherwise not immediately appealable

16 orders, if conditions specified in the section are met, the district court so certifies, and the court of

17 appeals exercises its discretion to take up the request for review. *Caterpillar Inc. v. Lewis*, 519 U.S. 61,

18 74 n. 10, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). This Court has the authority to entertain the petition

19 for certification of an order for interlocutory appeal because certification by the district court is the first

20 step in §1292(b) procedure.

21        Section 1292(b) imposes three criteria which must be met before a district court may certify an

22 interlocutory appeal: the order must state "(1) that there is a controlling question of law, (2) that there

23 is substantial grounds for difference of opinion, and (3) that an immediate appeal may materially

24 advance the ultimate termination of the litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673

25 F.2d 1020, 1026 (9th Cir. 1982), *aff'd*, 459 U.S. 1190 (1983); 28 U.S.C. §1292(b); *Katz v. Carte Blanche*

26 *Corp.*, 496 F.2d 747, 754 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

27 An order is "controlling" if its resolution could materially affect the outcome of the litigation. *In re*

28 *Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d at 1026 (trial judge's recusal is a collateral issue and

1   not controlling). California Fruit must show that an immediate appeal may "materially advance," rather

2   than impede or delay, ultimate termination of the litigation. *Id.* at 1026. The Ninth Circuit has

3   "recognized the congressional directive that section 1292(b) is to be applied sparingly and only in

4   exceptional cases, and that the 'controlling question of law' requirement be interpreted in such a way

5   to implement this policy." *In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d at 1027 (trial

6   judge's recusal viewed as 'collateral' to basic issues of lawsuit).

7          Here, California Fruit has not carried its burden of establishing the three prerequisites of

8   §1292(b) certification. Petitioner bears the burden of persuading the court "that *exceptional*

9   *circumstances* justify a departure from the basic policy of postponing appellate review until after the

10  entry of final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474-475, 98 S.Ct. 2454, 2461

11  (1978).

12         Arguably, the first and third prerequisites are met. The issue of whether California Fruit is a

13  party to the Tolling Agreement and may pursue its claims under the Agreement is a controlling issue.

14  Resolution of this issue will materially advance the termination of the litigation because all of the parties

15  will be "joined" for discovery and trial.

16         On the other hand, it is equally arguable that the issues are not controlling and they would not

17  materially advance the litigation. Complete relief can be adjudicated *as between the existing parties*.

18  Complete resolution of the issues involving Morning Star and Crown can be determined, even in

19  California Fruit's absence. California Fruit's claims are tangential to the claims between Morning Star

20  and Crown. California Fruit's claims could be resolved in separate litigation after appeal. While this

21  would not be the most judicially economical, judicial economy is not considered. Judicial economy and

22  expediency alone are insufficient to "materially affect the outcome of the litigation in district court."

23  *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d at 1026.

24         Nonetheless, the second requirement, that there is substantial grounds for difference of opinion,

25  is not met. There is not substantial grounds for difference of opinion of whether California Fruit may

26  reform the tolling agreement or whether the unilateral limitations period is unreasonable. California

27  Fruit argues there are two inconsistent lines of cases addressing the issue of whether a nonsignatory can

28  reform a contract.

6

1     In the August 3, 2004 order, this Court addressed the cases relied upon by California Fruit and

2 distinguished the cases based upon factual differences. In fact, there are not truly "lines" of cases, but

3 different factual scenarios. In this Court's August 3, 2004 Order, the Court distinguished the cases now

4 relied upon by California Fruit: The Court's order distinguished   *Cantlay v. Olds and Stoller Inter-*

5 *Exchange,* 119 Cal.App. 605 (1932):

6                 "The facts here are dissimilar to *Cantlay.* This is not an insurance
                coverage action to which California Fruit was an intended beneficiary of
7                 a policy. California Fruit was a party to the requirements contract. By
                admitted drafting error, it was not named in the tolling agreement. There
8                 is no demonstration that Morning Star entered into the tolling agreement
                for California Fruit's benefit to toll the limitations period. Morning Star
9                 was a party to the requirements contract and entered into the tolling
                agreement to toll the limitations period for its claims." (August 3, 2004
10                 Order, p. 10:28-11:5.)

11 The Court's order also addressed the factual differences of *American Surety Co. v. Heise,* 36 Cal.App.2d
    689 (1955):

12

13                 "Like *Cantlay, Heise* is an insurance coverage action addressing error in
                policy issuance. In *Heise*, the parties had reached agreement as to the
                intended insured but through insurance agent error, the policy incorrectly
14                 noted the car's owner and the insured. In this action, neither Crown nor
                Morning Star acted as an agent similar to the insurance agent in *Heise*.
15                 Again, there is nothing to suggest California Fruit was an intended
                beneficiary under the tolling agreement in that it was an independent
16                 party to the requirements agreement and was not prohibited to enter into
                a tolling agreement with Crown." (August 3, 2004 Order, p. 11:19-24.)

17
    Finally the Court distinguished *Calhoun v. Downs*, 211 Cal. 766, 297 P. 548 (1931):

18

19                 "Plaintiffs also rely on *Calhoun v. Downs*, 211 Cal. 766, 297 P. 548
                (1931), where a real estate sales agreement omitted a real estate broker's
                name and commission from a provision stating 'I agree to pay a
20                 commission of $___ to ___.' The plaintiff brought action against the
                sellers and buyer to recover his commission, and the California Supreme
21                 Court overruled demurrers in favor of the defendant sellers and buyer.
                Dissimilar to the tolling agreement at issue here, the commission
22                 provision was included in the *Calhoun* sales agreement, but not filled in,
                for payment of the real estate broker's commission. The tolling
23                 agreement here did not include an unfilled blank for California Fruit's
                name." (August 3, 2004 Order, p. 11:25-12:3.)

24

25 The above cases do not represent a separate, contrary "line" of cases, but unique factual scenarios which

26 are inapplicable to the facts before the Court.

27     California Fruit now relies on *Capehart v. Heady*, 206 Cal.App.2d 386 (1962) for the proposition

28 that the limitations period in the Tolling Agreement is unreasonable.     *Capehart*   involved a

1  tenant/landlord dispute. The landlord's notice to quit was the event that triggered the lease's three-month
2  period within which the tenant could file suit against the landlord. The Court upheld the shortened
3  provision. In addition, the shortened limitations provision was not mutual; it required only that the tenant
4  institute suit within the shortened period. The court also upheld the provision even though it lacked
5  mutuality: "[T]he fact that a contractual limitation period operates upon the claims of one party to the
6  contract and not of the other, does not make the period unreasonable." *Id. at 390*, citing *Beeson v.
7  Schloss,* 183 Cal. 618, 621. Thus, *Capehart* supports the proposition that a shortened, unilateral statute
8  of limitations is reasonable.

9  The issues sought to be certified are not ones of "first impression" or exceptional. *Compare
10  SEC v. Rind,* 991 F.2d 1486, 1488 (9th Cir. 1993) ("This interlocutory appeal raises an important issue
11  of first impression: what, if any, statute of limitations applies to a civil enforcement action brought by
12  the Securities and Exchange Commission (Commission) and whether the right to a jury trial guaranteed
13  by the Seventh Amendment attaches."). California courts have afforded contracting parties considerable
14  freedom to modify the length of a statute of limitations. *See, generally, Moreno v. Sanchez,* 106
15  Cal.App.4th 1415, 1430 (2003). California courts generally enforce parties' agreements for a shorter
16  limitations period than otherwise provided by statute, provided it is reasonable. "Reasonable" in this
17  context means the shortened period nevertheless provides sufficient time to effectively pursue a judicial
18  remedy. *Moreno v. Sanchez,* 106 Cal.App.4th at 1430. Indeed, *Moreno* upheld a 3-month limitations
19  period, and in addition, the limitations period was unilateral.

20  Thus, this case does not present issues which are appropriate for certification for interlocutory
21  appeal.

22  ## CROWN'S MOTION FOR SUMMARY JUDGMENT

23  ### ANALYSIS & DISCUSSION

24  **Summary Judgment Standard**

25  Initially, it is the moving party's burden to establish that there is "no genuine issue of material
26  fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British
27  Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir. 1978), *cert. denied,* 440 U.S. 981 (1979).
28  Rule 56(e) requires the party against whom the motion is made to "set for specific facts showing that

8

1    there is a genuine issue for trial." Absent such a showing, a properly supported motion for summary
2    judgment may be granted if the court finds it appropriate." *Nelson, Robbins, et al v. Louisiana Hydrolec*,
3    854 F.2d 1538, 1545 (9th Cir. 1988).

4         A genuine issue of material fact exists when "...there is sufficient evidence favoring the non-
5    moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
6    249 (1986). Facts are material when so rendered by the applicable substantive law. *Id.* at 248. Thus,
7    summary judgment should be entered, after adequate time for discovery and upon motion, against a party
8    who fails to make a showing sufficient to establish the existence of an element essential to that party's
9    case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catarett*, 477 U.S.
10   317, 322. "[A] complete failure of proof concerning an essential element of the non-moving party's case
11   necessarily renders all other facts immaterial," and, in such circumstances, summary judgment should
12   be granted "...so long as whatever is before the...court demonstrates that the standard for entry of
13   summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

14        To establish the existence of a factual dispute, the opposing party need not establish a material
15   issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to
16   require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank*
17   *of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968). The opposing party "must do more than simply
18   show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a
19   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue
20   for trial.'"*Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations
21   omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be
22   drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*,
23   477 U.S. at 255. The court must not weigh the evidence and must draw all reasonable inferences in
24   favor of the nonmoving party. *See Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997); *Eastman*
25   *Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 112 S.Ct. 2072, 2077 (1992) ("Because this
26   case comes to us on petitioner Kodak's motion for summary judgment, the evidence of respondents is
27   to be believed, and all justifiable inferences are to be drawn in their favor."). Nevertheless, inferences
28   are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

9

1  which the inference may be drawn. *Richards v. Nielson Freight Lines*, 602 F. Supp. 1224, 1244-1245
2  (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

3         The court, however, has no duty to search the record, *sua sponte*, for some genuine issue of
4  material fact; the court may rely entirely on the evidence of the moving party. *Guarino v. Brookfield*
5  *Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). If the motion is based on deposition testimony,
6  the court may rely exclusively on portions highlighted by the moving party and need not comb the
7  deposition to discover conflicting testimony. *Guarino v. Brookfield Township Trustees, supra*, 980 F.2d
8  at 403. The court is not obligated to consider matters not specifically brought to its attention. Thus, it
9  is immaterial that helpful evidence may be located somewhere in the record. The opposition must
10  designate and reference specific triable facts. *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (DC
11  Cir. 1988).

12  **Proof of Damages**

13         Plaintiff Morning Star alleges defendant Crown breached the Supply Agreement. A cause of
14  action for breach of contract requires proof of (a) a contract, (b) plaintiff's performance or excuse for
15  nonperformance, (c) defendant's breach, and (d) damage to plaintiff. *First Commercial Mortgage Co.*
16  *v. Reece*, 89 Cal.App.4th 731, 745 (2001). In this motion, Crown challenges the last element, that
17  Morning Star does not have any damages as a result of the breach.

18         Morning Star argues, at length, that it was a party to the Supply Agreement and is therefore
19  entitled to sue for breach of the agreement. There is no dispute but that Morning Star is a party to the
20  Supply Agreement. The issue here, however, is whether Morning Star has been damaged.

21         The basic object of damages is *compensation*, and in the law of contracts the theory is that the
22  party injured by breach should receive as nearly as possible the equivalent of the benefits of
23  performance. See Civ.Code §3300. The aim is to put the injured party in as good a position as he would
24  have been had performance been rendered as promised.     *Brandon & Tibbs v. George Kevorkian*
25  *Accountancy Corp.*, 226 Cal.App.3d 442, 455 (1990). Civil Code section 3300 provides: "For the breach
26  of an obligation arising from contract, the measure of damages, except where otherwise expressly
27  provided by this code, is the amount which will compensate the party aggrieved for all the detriment
28  proximately caused thereby, or which, in the ordinary course of things, would be likely to result

10

1  therefrom." "The detriment that is 'likely to result therefrom' is that which is foreseeable to the breaching
2  party at the time the contract is entered into." *Wallis v. Farmers Group, Inc.*, 220 Cal.App.3d 718, 737
3  (1990).

4  Morning Star argues that the parties dealt with each other as if Morning Star and California Fruit
5  were the same. The parties' course of performance, however, cannot define who the injured party is in
6  the relationship. Morning Star and California Fruit are two separate legal entities. (Complaint ¶¶1, 2,
7  6.) Whether Crown treated both as "one customer" is irrelevant to the legal right to sue for damages.

8  Morning Star cites *Sicor Ltd v. Cetux Corp*, 51 F.3d 848, 857 (9th Cir.), *cert. denied*, 516 U.S.
9  861 (1995) for the proposition that "terms of a contract involving the sale of goods may be explained
10  or supplemented by course of performance." In *Sicor*, suppliers of a cancer drug brought action against
11  distributor, competitor, and related entities, asserting federal antitrust claims and state law claims. The
12  contract contained an ambiguity as to whether defendants could seek an alternative manufacturer of the
13  drug. The Ninth Circuit denied defendants' motion for summary judgment. The court stated that while
14  the course of the parties' actual performance is considered to be the best indication of what the parties
15  intended the writing to mean, competing factual inference precluded summary judgment. The case did
16  not involve whether plaintiff could recover for damages incurred by another.

17  California Fruit also cites *Cober v. Connolly*, 20 Cal2d 741, 744 (1942). This case is
18  distinguishable. In *Cober*, a promissory note contained an unqualified promise to pay a stated amount
19  to three named persons. The Court held that the note created a joint right in favor of the three payees.
20  One payee accepted performance. The Court held that the acceptance of performance by one payee
21  discharged the whole debt as to all payees. This case is not supportive because the court rejected the joint
22  creditors' claim and in fact, held that multiple recovery was not permitted.

23  Morning Star does not point to any other authority which permits it to recover for the damages
24  suffered by another.

25  There is evidence before the Court that "Morning Star" suffered damages as a result of Crown's
26  breach. In a December 5, 2002 letter, Morning Star's counsel identified the damages suffered:

27  "As a result of Crown Cork's breach of the supply agreement, **Morning
   Star** has incurred, and will continue to incur, significantly greater
28  expenses in obtaining the containers it needs for its business. Based on

11

> **Morning Star**'s records, it paid an additional $2,033,491 for containers
> for July through October of 2002 (the fresh pack season) over what it
> would have paid had Crown Cork not breached the supply agreement.
> **Morning Star** will also incur damages for off season production . . .
> Accordingly, this letter constitutes **Morning Star**'s demand for payment
> of the sum of $2,033,491 in damages." (Exh. E to Gary Bradus Decl. -
> Plaintiff's Response to Crown's Undisputed Facts no. 15) (Emphasis
> added.)

This is the sole evidence before the Court that "Morning Star" suffered any damages from Crown's alleged breach.

The Court acknowledges that plaintiff has argued in this motion, and others, that the parties' course of conduct often combined reference to Morning Star and California Fruit into a single reference to "Morning Star." In their course of conduct, when the parties referred to "Morning Star," plaintiff has argued that they really meant "California Fruit." Thus, the reference in the December 5, 2002 letter to "Morning Star" may very well mean "California Fruit." However, there is no evidence before the Court that anyone other the Morning Star was referred to in this particular letter. The Court must view the evidence in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. All reasonable inferences must be drawn in the opposing party's favor. *Eastman Kodak Co.*, 504 S.Ct at 2077.

In its reply papers, California Fruit objected to the letter only on the grounds of relevance. The letter is relevant to the issue of Morning Star's damages. The clear reference is that Morning Star suffered the damage.

At oral argument, defendant objected to the December 5, 2002 letter on the grounds of hearsay and that it is "unsupported." Any objection to declarations or other evidence must be made at or before the hearing and should be ruled upon by the court before ruling on the motion itself. *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 n.9 (9th Cir. 1980). The Court finds that the objection is timely because it was made at the oral argument and plaintiff was given a full opportunity to respond to the oral objections.

A motion pursuant to Federal Rule of Civil Procedure 56 must be supported by admissible evidence. Rule 56 requires that affidavits supporting a Motion for Summary Judgment "... be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

12

1  affirmatively that the affiant is competent to testify to the matters stated herein." Admissibility is

2  determined under the Federal Rules of Evidence. "A hearsay assertion that would not be admissible if

3  testified to at trial is not competent material for a Rule 56 affidavit." *Sarno v. Douglas Elliman-Gibbons*

4  *& Ives, Inc.*, 183 F.3d 155, 160 (2nd Cir. 1999). Inadmissible documents cannot be used to defeat a

5  motion for summary judgment. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir.1990)

6  ("This court has consistently held that documents which have not had a proper foundation laid to

7  authenticate them cannot support a motion for summary judgment.")  Factual contentions made in

8  support of or in opposition to any motion must be supported by an affidavit or declaration and by

9  appropriate references to the record. *Republic Western Ins. Co. v. Fireman's Fund Ins. Co.*, 241

10 F.Supp.2d 1090, 1095 (N.D.Cal. 2003). Extracts from depositions, interrogatory answers, requests for

11 admissions and other evidentiary matters must be appropriately authenticated by an affidavit or

12 declaration. *Id.* "At the summary judgment stage, we do not focus on the admissibility of the evidence's

13 form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036

14 (9th Cir. 2003), *cert. denied,* 124 S.Ct. 1663 (2004)..

15      Here, the December 5, 2002 letter is inadmissible.  It lacks foundation as to how the author

16 knows and obtained the information about which he writes. In addition, the letter is hearsay. The facts

17 therein are stated for the truth of the matter and are not supported by the appropriate declaration.

18 Accordingly, the letter is inadmissible.

19      The evidence in judicial admissions by plaintiff is that plaintiff did not purchase the cans and that

20 it was not the user of the cans. (Morning Star's Response to Crown's Statement of Undisputed Facts,

21 fact no. 2, 3.) Crown points to other admissions in support of its position.

22     1.   Plaintiff's Point & Authorities opposing Crown's Motion to Dismiss:

          A.  "California Fruit (not Morning Star Packing) was the purchaser of the containers

23               at issue." (Exh. A p.1:20-23)

          B.  "Morning Star Packing had no need for the cans and did not use cans of the sizes

24               which were subject to the contract." (Exh. A p. 3:1-2.)

          C.  "California Fruit, and not Morning Star Packing, was purchasing the cans. . ."

25               (Exh. A, p.4:13-14.)

          D.  "California Fruit was the user of the cans at issue. . ." (Exh. A p.10:16-19.)

26           E.  "Crown knew since the supply agreement was executed that the cans were

              purchased by California Fruit and the California Fruit, therefore would incur

27               damages from the breach." (Exh. A, p.12:11-13.)

          F.  "Crown knew the claimed damages were suffered by California Fruit." (Exh. A

28               p. 13:3.)

1   2.   Plaintiff's Reply brief filed on July 16, 2004:
            A.   ". . The injured party [was] California Fruit." (Exh. B, p.1:5.)
2           B.   "California Fruit was the party injured by [Crown's] breach." (Exh B, p.1:9.)
            C.   ". . .the party aggrieved was California Fruit." (Exh B, p.2:7-8.)
3           D.   ". . . California Fruit was the purchaser of the cans, and therefore was the party
                 which would incur the damages in the event that Crown was unable to perform
4                on the contract." (Exh. B. p. 5: 5-7.)

5   3.   Plaintiff's First Amended Complaint:
            A.   "Since Crown Cork's breach, California Fruit has developed retail lines and has
6                commenced purchasing cans from all but one of the categories in the agreement."
                 (Exh. C, ¶18:26-27.)
7           B.   "Morning Star Packing processes tomatoes into paste for bulk sale to food
                 processors and manufacturers," while "California Fruit processed tomatoes and
8                peaches and cans the finished product." (Exh. C, ¶7).

9   4.   Plaintiff's proposed second amended complaint:
            A.   "Morning Star Packing had no need for the cans, and did not use cans of the sizes
10               which were subject to the contract" (Exh. D. ¶11.)
            B.   "Crown Cork knew the California Fruit, and not Morning Star Packing, was
11               purchasing the containers." (Exh. D, p¶21, lines 15-16.)
            C.   "California Fruit was the user of the containers at issue in the Supply Agreement
12               and was the entity which would suffer damages as the result of the breach."
                 (Exh. D, ¶33, line 11-13.)
13

14   With this evidence, coupled with the lack of evidence of direct damages, There is no evidence before

15   the Court which raises an issue of fact of whether Morning Star suffered damages. Crown has carried

16   its burden that it is entitled to summary judgment.

17                                          **CONCLUSION**

18   For the foregoing reasons, the Court issues the following order:

19   1.   California Fruit and Tomato Kitchens, LLC's motion to certify issue for appeal and stay

20        proceedings in the trial court is DENIED.

21   2.   Crown Cork & Seal Company (USA), Inc.'s motion for Summary Judgment is

22        GRANTED.

23

24   IT IS SO ORDERED.

25

26   DATED: _December 3, 2004_

27                                          LAWRENCE J. O'NEILL
                                            UNITED STATES MAGISTRATE JUDGE
28

                                               14

United States District Court
for the
Eastern District of California
December 6, 2004

* * CERTIFICATE OF SERVICE * *

1:03-cv-06938

The Morning Star

v.

Crown Cork Seal Inc

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  December 6, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

     D Gregory Durbin                                   LJO
     McCormick Barstow Sheppard Wayte and Carruth
     PO Box 28912
     Five River Park Place East
     Fresno, CA   93729-8912

     Dale Curtis Campbell
     Weintraub Genshlea Chediak Sproul
     400 Capitol Mall
     11th Floor
     Sacramento, CA   95814

     Mark H Rosenthal
     Law Office of Mark H Rosenthal
     44 Montgomery Street
     Suite 4020
     San Francisco, CA   94104

Jack L. Wagner, Clerk

BY _____
   Deputy Clerk

Case No: 1:03-cv-6938    Document No: 53,   1 Copy Printed: Dec, 6, 2004  11:48 AM

Dale Curtis Campbell
Weintraub Genshlea Chediak Sproul
400 Capitol Mall
11th Floor
Sacramento, CA 95814

**EXHIBIT C**

1  Mark H. Rosenthal - State Bar No. 62573
   44 Montgomery Street, Suite 4020
2  San Francisco, CA 94104
   415-986-1364
3
   Attorney for Defendant and Cross-Complainant
4  Crown Cork & Seal Company (USA), Inc.
5

FILED

2005 SEP -7 P 2: 12

. . . . . . . DIST. COURT
L. . . . . .        . . . LIF
CY. . . .      . . . . . .

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8                         (FRESNO DIVISION)

9  THE MORNING STAR PACKING           )  Case No.: CIV. F-03-6938 ~~FEB~~ LJO
   COMPANY, L.P. and CALIFORNIA       )
10 FRUIT AND TOMATO KITCHENS,         )
   L.L.C., formerly known as          )
11 CALIFORNIA FRUIT PACKING           )
   COMPANY, L.L.C.,                   )  STIPULATION AND ORDER FOR DISMISSAL
12                                    )  WITHOUT PREJUDICE OF CROSS-
13                                    )  COMPLAINANT'S CROSS-COMPLAINT
      Plaintiff,                      )
14                                    )
         vs.                          )
15                                    )
   CROWN CORK & SEAL COMPANY          )
16 (USA), INC., a Delaware corporation, )
17 and DOES 1 through 10, inclusive,  )
                                      )
18    Defendants                      )
19 _____ )
   CROWN CORK & SEAL COMPANY          )
20 (USA), INC.,                       )
21                                    )
      Defendant and Cross-Complainant, )
22                                    )
23       vs.                          )
                                      )
24 THE MORNING STAR PACKING           )
25 COMPANY, L.P. AND CALIFORNIA       )
   FRUIT PACKING COMPANY,             )
26 L.L.C.,                            )
27                                    )
      Cross-Defendants                )
28 _____ )

STIPULATION AND ORDER FOR DISMISSAL WITHOUT PREJUDICE OF CROSS-COMPLAINANT'S CROSS-COMPLAINT
T:\30139\Pleadings\Stip.Dism.w.out.prej.x-comp.8.22.05.doc

1       It is hereby stipulated by the parties to this action, through their respective counsel,
2   that the cross-complaint filed by defendant and cross-complainant Crown Cork & Seal
3   Company (USA), Inc. be dismissed without prejudice, each party to bear its own costs and
4   attorney's fees.

5       Dated: August 22, 2005          Crown Cork & Seal Company (USA), Inc.

6

7

8                                       By Mark H. Rosenthal, its attorney

9

10      Dated: September 2, 2005         THE MORNING STAR PACKING COMPANY,
                                        L.P. AND CALIFORNIA FRUIT PACKING
11                                      COMPANY, L.L.C.

12

13

14                                      By Dale Campbell, their attorney

15

16      It is so ordered.

17      Dated: Sept 7, 2005

18                                      United States District Court Judge

19

20

21

22

23

24

25

26

27

28

1

November 30, 2005

<u>Via Federal Express</u>

ᵢᵢᵢ MERITAS LAW FIRMS WORLDWIDE

Chambers of The Honorable Lawrence J. O'Neill
Attn: Irma Lira
United States District Court/Fresno Division
1130 O Street
Fresno, CA 93721

Dale C. Campbell
916.558.6014 DIRECT
dcampbell@weintraub.com

Re:    *The Morning Star Packing Co. v. Crown Cork*
       US District Court/Eastern District Case No. CIV.F-03-6938 REC LJO

Dear Ms. Lira:

Pursuant to our telephone conversation today, enclosed please find the original and one
copy of the proposed final judgment regarding the above referenced matter. Please note
this document was e-filed on November 18, 2005 and has been approved as to form by
counsel for all parties. Also enclosed is a return envelope for your convenience.

Should you have any questions or corrections to the form, please contact our office.

Very truly yours,

**weintraub** genshlea chediak
law corporation

*Teri Maldonado*

Teri Maldonado
Assistant to Dale C. Campbell

cc:    Mark Rosenthal (w/enclosure)
       Greg Durbin (w/enclosure)